# IN THE COURT OF APPEALS OF IOWA

No. 14-1286
Filed April 8, 2015

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**JOSHUA B. GORLA,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.

　　　　Joshua Gorla appeals the sentence imposed following his guilty plea to willful injury causing bodily injury in violation of Iowa Code section 708.4(2) (2013). **AFFIRMED.**

　　　　Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, John Sarcone, County Attorney, and David Porter, Assistant County Attorney, for appellee.

　　　　Considered by Danilson, C.J., Potterfield, J., and Mahan, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**POTTERFIELD, J.**

Joshua Gorla appeals the sentence imposed following his guilty plea to willful injury causing bodily injury in violation of Iowa Code section 708.4(2) (2013), which was a lesser-included offense of willful injury causing serious injury, the offense with which he was originally charged. Gorla contends the district court considered the unproven greater offense (willful injury causing serious injury) in sentencing him to a term of incarceration not to exceed five years. Concluding the district court did not abuse its discretion in sentencing Gorla, we affirm.

**I. Background Facts and Proceedings.**

On September 13, 2013, Gorla was at his cousin's house, when Gorla's older brother came over. At the plea hearing, Gorla described the event that led to his being charged: "my brother comes over to my cousin's house and the three of us get into an altercation and I held my brother down on the ground and then my cousin kicked him in the head several times." The following exchange occurred at the plea proceeding:

> THE COURT: And I assume your cousin had the intent to inflict serious injury on your brother by kicking him in the head?
> THE DEFENDANT: Yes, sir. I did attempt to stop him from kicking him in the head by putting my arm in front of his leg. My intentions was [sic] not to have him kicked in the head.
> THE COURT: Well, if you are guilty of this charge, you or the person that you were assisting has to have had the intent to inflict serious injury on the other person. You heard me tell you what the State would have to prove. Did you or this person you were assisting have the intent to inflict serious injury?
> THE DEFENDANT: Yes, we did.

As a result of the altercation, Gorla told the court that his brother suffered "a head injury to his face." The court asked him, "Bruise, scratch?" Gorla described the injury as a "gouge" under his eye.

A presentence investigation (PSI) report was prepared. Gorla's criminal history showed several alcohol-related offenses, as well as a family history of alcoholism. Included in the PSI was Gorla's brother's submitted victim impact statement, which included:

> This has affected my day to day life tremendously; I have mood, swings and a fear of people in general. . . . Because of my brother's actions I have mental break downs 3-4 times were week. . . . I have an anxiety disorder and have to see my psychiatrist to have my medication increased. . . .
> When it comes to injuries, I had to go to the emergency room and was taken immediately to trauma. I had severe bruising on the right side of my face and my right eye was swollen shut for about 3 days. I had a cut under my right eye and will have a permanent scar[]. I had a scratched cornea to my right eye, which has healed. I had bruises all over my body, which ha[ve] healed. I was admitted into the hospital and was given morphine and dilaudid for my extreme pain while in the hospital. Upon my release, I had to take oxycodone for pain management. I was bed ridden for about a week and had to constantly keep ice on my face to get the swelling down. My mother had to take care of me for about a week while my wife was at work. My wife had to take care of me after work. Most nights I had to wake her up in the middle of the night because of the extreme pain I was in. Due to the fact that the defendant is my little brother the pain hasn't or maybe never will go away. What I mean by this is at this time the physical pain is gone, but the emotional trauma is constant. I would rather be in physical pain th[a]n to have to deal with my emotional pain. I love my brother and hope he can get help.

The PSI concluded:

> Based on the information gathered, verified and contained in this report, and on the serious nature of the crime, it is the recommendation of this investigator that Mr. Gorla be sentenced to prison. While incarcerated, this agent would recommend the Court order the defendant:

        -obtain a substance abuse evaluation and follow all recommendations
        -be screened for an assaultive behavior course
        -follow any other recommendations his correctional counselor might have

Gorla had no objections to the PSI.

Sentencing took place before the same judge who took Gorla's plea and heard Gorla's admissions regarding the injuries sustained by his brother. The prosecutor concurred with the PSI recommendation of incarceration "[d]ue to the defendant's lengthy criminal history dating back to 1998, due to the fact that defendant was on parole at the time this offense took place[,] and considering the severity of the offense." The defense argued for a suspended sentence and placement at the Fort Des Moines Correctional Facility, acknowledging an alcohol problem and noting Gorla had discharged his parole following his arrest and had possible employment. In allocution, Gorla stated,

> Your Honor, that I wasn't in the right state of mind for the last quite a few months with the alcohol drinking and I apologize for my not doing what the court is asking me to as far as the PSI and my obligation that I was supposed to do.
> Your Honor, it is my older brother, I love him very much. I would never, never want something like this to happen to him. It wasn't something that I was intending to do. That's all I got, your Honor.

The district court imposed an indeterminate sentence of five years.

Gorla now appeals, contending the court improperly relied upon an unproven offense.

## II. Scope and Standard of Review.

"Because the sentence imposed does not fall outside statutory limits, our review is for abuse of discretion." *State v. Jose*, 636 N.W.2d 38, 41 (Iowa 2001);

*see also State v. Knight*, 701 N.W.2d 83, 85–86 (Iowa 2005). "Such abuse occurs when the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Jose*, 636 N.W.2d at 41 (citation and internal quotation marks omitted).

## III. Discussion.

"It is a well-established rule that a sentencing court may not rely upon additional, unproven, and unprosecuted charges unless the defendant admits to the charges or there are facts presented to show the defendant committed the offenses." *State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002). "If a district court improperly considers unprosecuted and unproven additional charges, we will remand the case for resentencing." *Id.*; *see also State v. Lovell*, 857 N.W.2d 241, 242–43 (Iowa 2014) ("We will not vacate a sentence on appeal unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure such as the trial court's consideration of impermissible factors. However, if a court in determining a sentence uses any improper consideration, resentencing of the defendant is required, even if it was merely a secondary consideration." (citations, alterations, and internal quotation marks omitted)). "On our review, a district court's sentencing decision enjoys a strong presumption in its favor." *Jose*, 636 N.W.2d at 41.

To support his challenge to the sentence imposed, Gorla points to the highlighted statement below included in the district court's statements during sentencing:

> Well, the court has considered the presentence investigation report, the statements of the attorneys, statement of the defendant. The court believes incarceration is appropriate in this case for

several reasons: Number one would be the defendant's criminal history. I don't have any doubt that your criminal history is mostly from drinking, that you were on parole for a third OWI, is that what you were on parole for when you did this? You were in the OWI treatment facility while you were actually incarcerated?

THE DEFENDANT: For the majority of the time, yes.

. . . .

THE COURT: So I misread the year here but still in all the criminal history, the inability for whatever reason having had several opportunities to address your alcoholism and your drinking and your criminality that results from it, the dangerousness that you pose to people like your brother when you are drinking but the other thing is I read in here it said you told the PSI investigator—well, maybe I was confused by it. You said you weren't using any drugs when this happened. Were you drunk?

THE DEFENDANT: During the incident? Yes, I was drunk.

THE COURT: So driving while you are drunk, a history of driving while you are drunk, history of fighting while you are drunk, beating up your brother, helping your cousin beat up your brother and your brother was very gracious in what he said to you, but he also said you need to take responsibility for what you did and your part of it.

*He was seriously injured.* He acknowledged that your cousin did most of the actual beating but it wouldn't have been possible for him to do that without you holding your brother, dragging your brother down.

So to the extent you minimize this because you weren't the one that actually kicked your brother in the face, that's minimization that is not warranted by your behavior. So I believe—and the fact that you missed—after you pled guilty and were supposed to go to do an interview for the PSI, you missed your appointment and why was that?

THE DEFENDANT: Just irresponsibility.

THE COURT: So PSI recommends incarceration and it is fully warranted for the reasons that I just said. Hopefully you get the message at some point in time. I know you were in prison for OWI third. Now you are going to prison for committing a crime, assaultive violent crime. Maybe now when you are actually in prison for a criminal offense not related directly for treatment you will get the message that you need to do something about your alcoholism right now or you will keep going to jail, getting out.

You might end up killing somebody at some point either by driving a car when you are drunk or getting in a fight and maybe the other person has a weapon or something and all of a sudden the person that you didn't intend to kill is dead and you are just as responsible as the person that you were with.

That's sort of the behavior that you are showing here as you move along through your life so you need a message to stop that. Hopefully this will be it.

For the reasons that I just said, on the defendant's conviction of willful injury causing a bodily injury, the defendant is sentenced to an indeterminate term of incarceration not to exceed five years. The mandatory minimum fine is imposed but suspended because of the defendant's incarceration.

Gorla argues the district court's consideration of the fact that Gorla's brother was "seriously injured" was improper because "serious injury" is a term of art in Iowa law. *See* Iowa Code § 702.18 (defining "serious injury" as either "disabling mental illness" or "bodily injury which does any of the following: (1) [c]reates a substantial risk of death; (2) [c]auses serious permanent disfigurement; [or] (3) [c]auses protracted loss or impairment of the function of any bodily member or organ"). Gorla contends, "The court's statement that Gorla's actions 'seriously injured' his brother demonstrates that the court considered an unproven crime—the greater charge which was dropped in exchange for Gorla's guilty plea."

The State urges us to find either that the district court was using the phrase "seriously injured" in a colloquial sense to mean "badly hurt," or even if the court had considered the fact that the victim suffered what could be legally defined as a serious injury, no error occurred because the record establishes the victim suffered a serious injury.

This court accepted an argument similar to the one raised by Gorla in *State v. Carter*, No. 13-048, 2014 WL 69755, at *2–3 (Iowa Ct. App. Jan. 9, 2014), where the defendant was originally charged with willful injury causing serious injury but pled guilty to willful injury causing bodily injury. There, Carter

swung a beer bottle, striking a bar bouncer in the face—the bouncer sustained a chipped tooth and a lacerated lip requiring stitches and leaving a scar. *Carter*, 2014 WL 69755, at *1. The sentencing court several times referred to the defendant having caused serious injury. *Id.* at *2. We observed, "While the minutes noted the bouncer was left with a scar on his lip, not all scarring amounts to serious permanent disfigurement." *Id.* at *3 (citing *State v. Hanes*, 790 N.W.2d 545, 554 (Iowa 2010) (finding it proper to allow the jury to determine whether a scar constitutes serious permanent disfigurement)).

This case is distinguishable from *Carter* because there are sufficient facts in the plea and sentencing records from which the district court could find the assault caused serious injury. *See Formaro*, 638 N.W.2d at 725 (noting "the sentencing court may not rely upon additional, unproven, and unprosecuted charges . . . unless there are facts presented to show the defendant committed the offenses"). The assault here involved Gorla holding his brother down while his cousin repeatedly kicked him in the head. Gorla admitted during his plea colloquy that his cousin had the intent to seriously injure his brother and—implicitly acknowledging the danger this caused—Gorla stated he tried to block kicks to his brother's head. He also admitted his brother suffered a "gouge" under his eye, which is qualitatively different than the scarred lip suffered in *Carter*. And Gorla's brother offered a statement that he continues to suffer anxiety and "mental break downs." *See State v. Phams*, 342 N.W.2d 792, 795-96 (Iowa 1983) (discussing bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement). "There is no general prohibition against considering other criminal activities by a defendant as factors

that bear on the sentence to be imposed." *State v. Longo*, 608 N.W.2d 471, 474 (Iowa 2000) (allowing judge to consider defendant's criminal activity presented to him in sworn testimony at sentencing hearing).  We conclude the district court did not abuse its discretion in sentencing Gorla.  We therefore affirm.

**AFFIRMED.**